## FAIRBAIRN *v.* HOUGHTEN.

CONTRACTS—CONSTRUCTION.

> Defendant was elected manager of a corporation, and given a mortgage on the corporate property to secure advances to be made by him under an agreement "that he will furnish money for the prosecution of the business of said company, and for paying up the outstanding accounts of said company, which are now due, less stockholders' notes, which are to run one year, and shall not exceed $15,000." *Held*, that defendant was not required to pay stockholders' notes from the amount advanced by him.

Appeal from Wayne; Donovan, J. Submitted January 5, 1905. (Docket No. 19.) Decided February 4, 1905.

Bill by Thomas Fairbairn and others against Henry Houghten and another for an accounting. From a decree for complainants, defendants appeal. Reversed, and bill dismissed.

*James H. Pound,* for complainants.

*Fred C. Harvey,* for defendants.

McALVAY, J. The complainants Thomas Fairbairn, Isaac N. Payne, Judson Mayhew are directors, and Samuel A. Baugh is a stockholder, of the complainant corporation the Detroit Pressed Brick Company. This company was organized March 10, 1890, with a capital stock of $100,000, of which $40,000 was paid in, and afterwards stock sold and stock dividends increased the entire amount of stock taken to $65,155. Real estate was purchased, and buildings and machinery placed thereon, and the corporation proceeded to do business. The venture from the first was not successful. It early became necessary to borrow money, and afterwards mortgages upon the company's real estate to secure Robert Houghten for $4,000, State Savings Bank for $4,000, and Detroit Fire & Marine Insurance Company for $6,000, aggregating $14,000, were given to these creditors. The indebtedness of the company in October, 1894, was from $28,000 to $30,000, and was made up of the real-estate mortgages $14,000, certain stockholders' notes, and current floating indebtedness. On October 29, 1894, the directors of the company appointed a committee of three "to confer with Henry Houghten, and with full power to make arrangements with him to take charge of the affairs of the Detroit Pressed Brick Company." The committee appointed included complainants Fairbairn and Mayhew.

Henry Houghten is the principal defendant in this suit. He made a proposition in writing to this committee as follows:

"To the Committee of the Board of Directors of the Detroit Pressed Brick Co.

"I hereby make the following proposition to said committee:

"1st. I will take charge of the business of said Company at a compensation of $2,500.00 per year, including office rent and clerk hire.

"2nd. I will furnish money for the running of the business and paying up of the outstanding accounts less stockholders' notes which are to run one year, said sum

not to exceed $15,000 and the sum due J. W. Frisbie (to wit) $5,600.

"3rd. I will require a mortgage upon the real and personal property of said Company to secure such sum as he [I] may advance for the purpose of said business.

"4th. The office furniture is to become the property of J. W..Frisbie.

"5th. That this agreement is to take effect from Nov. 1st, 1894.                    H. HOUGHTEN."

On November 7, 1894, the committee reported to a meeting of the directors an agreement with Henry Houghten. This report was not in writing. It was adopted, " and the president and secretary were instructed to execute said agreement in writing, to be in duplicate." The agreement so authorized and executed is as follows:

"Articles of agreement entered into this seventh day of November, 1894, between Henry Houghten of the City of Detroit, and the Detroit Pressed Brick Co. (a corporation of the same place), by its President and Secretary, they having been duly authorized by the Board of Directors to execute the same, *Witnesseth:*

"1. That Henry Houghten hereby agrees to take charge of the business of said Company as its General Manager at the compensation of $2,500 per year, which is to include office rent, clerk hire, and services of the Secretary and Treasurer.

"2. That he will furnish money for the prosecution of the business of said Company and for paying up the outstanding accounts of said Company which are now due, less stockholders' notes which are to run one year, and shall not exceed $15,000.

"3. That the said Detroit Pressed Brick Company shall execute a mortgage of $10,000 upon its real estate and $10,000 upon its personal property to run for one year to secure the said Henry Houghten for all sums that he shall advance for said Company.

"4. That the said parties agree that the office furniture of said company shall become the property of J. W. Frisbie as a consideration of his bringing about this agreement.

"5. It is mutually agreed that this agreement shall take effect from Nov. 1st, 1894.

"In witness whereof we, the parties hereto, set our hands and seal this 7th day of November, 1894.

> "H. HOUGHTEN.
> "DETROIT PRESSED BRICK CO.
> "J. W. FRISBIE, President.
> "ISAAC N. PAYNE, Secretary."

The president and secretary at the same meeting were authorized to and did execute the chattel and real-estate mortgages mentioned in said agreement of $10,000 each. J. W. Frisbie, president and director, resigned, to take effect on adjournment of the meeting, which resignation was accepted. Defendant Henry Houghten was elected director to fill the vacancy caused by such resignation, and was elected president to fill the unexpired term of Mr. Frisbie. A short time after the agreement was executed and delivered to Houghten, he returned with his attorney, and asked to have an interlineation made in it. The meeting had adjourned. No one was present except Mr. Payne, who consented, and wrote in paragraph 2, in the last line, after the word "year," the words "or until said company may meet them."

Houghten at once entered upon his duties as general manager under the agreement above set forth. He furnished money, as appears by annual report April 1, 1895, to the amount of $10,268.04, and by annual report April 1, 1896, $22,116.27, principal and interest.

At the annual meeting of the directors held April 10, 1895, he was re-elected president of the company. At a meeting of the directors held November 22, 1895, by resolution "it is agreed by the board of directors of the Detroit Pressed Brick Co. that the mortgages heretofore given to Henry Houghten by said company shall be security for all advances made by him for said company up to the amount of the face of the mortgages." Houghten was elected president and general manager in 1896 at the annual meeting, which was the only meeting of the directors held that year. At a board meeting January 14, 1897, the president informed the directors of a demand from the

Detroit Fire & Marine Insurance Company for immediate payment of $650 interest on its mortgage, and a committee was appointed to raise the money. This committee reported at a meeting held February 14, 1897, and the president was authorized to raise the amount by mortgage on the company's Franklin street lot. At the annual meeting April 15, 1897, Houghten was again elected president and general manager at a salary of $2,000. April 27, 1897, Houghten reported at a meeting of the directors the details of his foreclosure sale of the mortgage on personal property, realizing $6,250. Directors Payne, Julien, and Fairbairn were "authorized to take proper steps to wind up the Detroit Pressed Brick Co. and have the corporation dissolved." This committee never reported any action. At the annual meeting of April, 1898, Fairbairn, Mayhew, Payne, and Baugh were dropped out of the board of directors, and a new committee was appointed. Houghten was engaged "general manager at a salary of $50 a month until the company's affairs are wound up." On April 19, 1898—the last meeting of the directors recorded—the company leased all interest remaining in the plant to Houghten for not more than one year at $50 per month.

The foregoing is a brief statement of all record of the proceedings taken by the company material to this case, including and subsequent to the time of making the contract with defendant Houghten.

It is claimed on the part of complainants that Houghten, under his contract, was obligated to pay the stockholders' notes amounting to $6,001; that he fraudulently absorbed the assets of the company by his conduct in managing its affairs and illegally foreclosing his mortgage. The bill is filed praying for an accounting with Houghten, that he pay the indebtedness according to contract, and for a receiver to wind up the affairs of the corporation and distribute the proceeds.

A large amount of testimony was taken in this case, from which the court found—and, we think, properly—that there was no fraud on the part of Houghten relative

to the foreclosure of the mortgages on the real and personal property. The court, construing the contract further, found that by its terms Houghten agreed to pay the stockholders' notes—in fact all of the floating indebtedness of the company.

The only important question to determine is whether this construction of the contract is correct. The question arises under the second paragraph of the contract:

"That he will furnish money for the prosecution of the business of said company and for paying up the outstanding accounts of said company which are now due, less stockholders' notes which are to run one year, and shall not exceed $15,000."

(The interlineation in this paragraph hereinbefore referred to was unauthorized and void.) The defendant had been approached by a committee "with full power to make arrangements with him to take charge of the affairs of the company." He had submitted in writing his proposition:

1. To take charge of the business of the company at a compensation of $2,500 per year, including office rent and clerk hire.

2. To furnish money for the running of the business and paying up the outstanding accounts, less the stockholders' notes, which are to run one year, said sum not to exceed $15,000, and the sum due J. W. Frisbie, to wit, $5,600.

3. To require a mortgage upon real and personal property to secure his advances.

The parties got together at the company's office November 7th, and the committee verbally reported an agreement, which report was adopted, and the execution of the agreement authorized. The contract and the mortgages were then executed and delivered. The proofs show almost without dispute that the amount of the stockholders' notes was $6,001, and also that the sum due stockholder Frisbie was not included with the stockholders' notes, and was to be paid at once. The bookkeeper testified that this Frisbie indebtedness appeared on the books separate from the stockholders' notes. The contract was prepared by

Mr. Payne as he understood it, and was read, and agreed upon without change. It appears to us clear from the agreement itself that Houghten was to furnish money to the amount of $15,000, and all evidence supports such construction. This money was to be furnished "for the prosecution of the business of said company, and for paying up the outstanding accounts of said company which are now due, less stockholders' notes, which are to run one year." The fair construction of this clause of the agreement does not include the stockholders' notes. They were deducted from the outstanding accounts then *due*, and were "to run a year." Any other construction would be strained. This is the construction given to this agreement by the parties. Houghten, as general manager at a salary of $2,500 per year, entered upon his duties. He paid all the outstanding accounts of the company then due, including the Frisbie indebtedness. He advanced money for the prosecution of the business until the amount he put in under this agreement was more than $15,000, as stipulated, and the resolution of November 22, 1895, declared that the mortgages given him should "be security for all advances made by him to the company up to the amount of the face of the mortgages." The question of the payment of the stockholders' notes by him was not raised at any meeting of the directors, as appears from the record of their proceedings, although a majority of these complainants were at all times members of the board. The complainants claim that they understood that Houghten was to pay the stockholders' notes. The understanding of the parties was merged in this written agreement, our construction of which is that he did not agree to pay these notes.

Much of the testimony in the record relates to the conduct of Houghten on foreclosing his mortgages. The records show without dispute that he realized from his sales of the properties all that they were reasonably worth. The finding of the trial judge in this matter has already been sustained.

In accordance with the view of this court that defendant Houghten was not, by his contract, bound to pay the stockholders' notes, so called, and that he did perform on his part as agreed, the decree of the court below is reversed, and the bill of complaint dismissed, with costs of both courts.

MOORE, C J., and GRANT, BLAIR, and HOOKER, JJ., concurred.